OSCN Found Document:DUKE v. DUKE

 

 
 

 
 DUKE v. DUKE
2020 OK 6
Case Number: 116221
Decided: 01/22/2020
IN THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 6, __ P.3d __

 

In Re THE MARRIAGE OF: JOSHUA JOE DUKE, Petitioner/Appellee, v.
PAIGE TAYLOR DUKE, Respondent/Appellant.

APPEAL FROM THE DISTRICT COURT OF LOGAN COUNTY

Â¶0 A divorce proceeding was filed in the District Court of Logan County where husband and wife each requested sole custody of their minor child. Trial was held and the Honorable R. L. Hert, Special Judge, of the District Court of Payne County, assigned to hear the matter pronounced a decree which awarded sole custody of the parties' minor child to the father. Mother appealed and filed a motion to retain the appeal in the Supreme Court. The appeal was retained by a previous order of the Court. We hold: (1) Application of the clear-weight-of-the-evidence appellate standard to determine if a child custody order was based upon insufficient evidence must be reviewed on appeal by reviewing all of the evidence used by the trial court when adjudicating custody; (2) When all of the evidence used by the trial court to adjudicate custody is not before the appellate court the clear-weight-of-the-evidence standard may not be applied, and if the parties had an opportunity to preserve the assigned appellate error in the trial and appellate record but failed to do so, the District Court's order must be affirmed.

DECREE OF DISTRICT COURT AFFIRMED

Barry K. Roberts, Norman, Oklahoma, for Appellant.
Jill M. Ochs-Tontz, Guthrie, Oklahoma, for Appellee.
Â 

EDMONDSON, J.
Â¶1 Mother challenges an order awarding sole custody of the parties' minor child to the child's father. The parties had an opportunity in the trial court to present their evidence and make a complete trial court record and a complete appellate record. The record we are presented with is incomplete and does not contain the guardian ad litem reports used by the trial court. We decline to expand our traditional appellate review beyond its appropriate sphere and make independent credibility determinations on appeal. Mother's assignment of error challenging the conclusion it was in the child's best interests for custody to father requires us to apply a clear-weight-of-the-evidence standard which in turn requires all of the evidentiary record to be before us. All of the record is not before us and we must affirm the District Court's decree.
I. The Case
Â¶2 Joshua Duke filed a petition seeking divorce and sole legal custody of the parties' child. He requested Logan County standard visitation for the mother, Paige Duke. Mother filed a response and petitioned for a divorce, sole legal custody of the parties' child, and an award for child support conforming to the Oklahoma Child Support Guidelines. She requested father be given Logan County standard visitation. A trial was held in the District Court of Logan County.[1] The parties' minor child was represented in the District Court by a guardian ad litem (GAL).
Â¶3 The trial court's decree dissolved the marriage, recognized the parties' previous agreement concerning marital debts and assets, and determined the ownership status of certain properties and assets which had been disputed. The trial court determined joint custody was not proper because mother resided in Weatherford, OK, and father resided in Guthrie, OK. The court awarded sole custody of the parties' six-year-old child to the child's father. The trial court made several additional provisions including, but not limited to, sale of the parties' residence, child support, visitation, the child's medical insurance, dependency status of the child for income tax purposes, and a ratio for splitting the child's medical costs which were not covered by the father's insurance.
Â¶4 Mother appealed and she raised four assignments of error in her amended petition in error which relate to (1) child custody and visitation, (2) the best interests of the child and child support, (3) division of marital property and marital debt, and (4) a catchall provision stating additional assigned error will be presented in her appellate brief. Mother's brief-in-chief contains two propositions with cited authority: (1) The trial court erroneously used an expunged domestic abuse criminal conviction involving mother's fiancÃ© when awarding custody to the father; and (2) The trial court erroneously awarded child custody to the father when the evidence showed the best interests of the child required custody to be awarded to the mother.
Â¶5 The District Court's journal entry states it is in the best interests of the mental, physical, and moral welfare of the minor child that father be awarded sole physical and legal custody of the parties' child. The journal entry states in part: "The parties have demonstrated that joint custody is not a possibility. Because the distance shared parenting is not feasible." The journal entry also states the following.
IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED testimony was presented that the fiancÃ©e [sic] of the Respondent was convicted of domestic abuse. Apparently, he received a deferred sentence and the case was dismissed and the record expunged. He was not called to testify about the matter or provide any evidence of how he fulfilled any condition of his deferred sentence. I do not know if the legislature intended to exclude a deferred sentence from, consideration under 43 O.S. 112.2, however, it certainly intended to protect children. If a rebuttable presumption exists that it is not in the best interest of the child to grant custody to the Respondent who either lives with or intends to marry and live with a person who has been convicted of domestic abuse within the last five years, the presumption was not rebutted. If not a conviction for the purpose of the statute, it still concerns me. No evidence was presented which alleviate my concerns and establish that living in a house with him could not or would not place the child in jeopardy.
Considering all the evidence presented and the law, I find that it is in the best interest of the child of the parties, [name deleted], be granted to the Petitioner with Respondent to have Logan County Standard Visitation.
Â¶6 The issues raised by mother on appeal are limited to those briefed with supporting authority[2] in the brief-in-chief and which are properly supplemented in her reply brief.[3] Issues raised by father in support of the District Court's decree are limited to the legal propositions raised in his answer brief with supporting authority and which relate to the facts shown in the appellate record.[4]
II. Standard of Review
Â¶7 Mother's briefs on appeal raise issues concerning the construction and application of five statutes: 12 O.S. Â§2608; 22 O.S.2011 Â§60.1; 22 O.S.Supp.2016 Â§19; 43 O.S.2011 Â§112.2; and 75 O.S.2011 Â§22. Father's answer brief adds 12 O.S. Â§2104 for additional consideration. Generally, an issue of law is presented by questions concerning the application and construction of a statute to an uncontested fact, and de novo appellate review is used by the Court.[5] Mother filed a motion for this Court to retain the appeal in this Court for an appellate decision and her motion was granted. Her motion argued an "intolerable conflict" exists between two statutes, 43 O.S.2011 Â§ 112.2 and 22 O.S.Supp.2016 Â§ 19. The issue whether statutes conflict when applied to an uncontested fact presents a question of law concerning interpretation and application of the statutes, and the Court uses de novo review to adjudicate the alleged conflict.[6] The arguments by both mother and father on the application and construction of these statutes present issues of law reviewed de novo by this Court.
Â¶8 Generally, an appellate court affirms the decree unless it is (1) against the clear weight of the evidence, or (2) contrary to law, or (3) contrary to established principles of equity.[7] Appellate review of a decree in equity determines whether (1) an error of law occurred of such magnitude that it created a decree "contrary to established principles of equity jurisprudence,"[8] or (2) the decree is contrary to the weight of the evidence.[9] The decree contrary to the weight of the evidence refers to the specific adjudication the trial court in equity was required to make, an equitable discretion exercised to determine the best interests of the child for the purpose of child custody.[10] A finding by the trial court in an equity proceeding carries with it a finding of all facts necessary to support the finding which may be found in the evidence considered by the trial judge.[11] If the appellate record is sufficient to show a decision has been made contrary to the weight of the evidence, then this Court will render the decree in equity the trial judge should have rendered.[12]
Â¶9 Mother challenges the trial court's award of child custody to father as contrary to the best interests of the child. This assigned error invokes our appellate review of an order adjudicating parents' opposing equitable and statutory claims to obtain child custody in a divorce proceeding.[13] Mother also asserts the trial court's exercise of discretion involved legal error when the trial court considered (1) fiancÃ©'s former conviction, and (2) apart from the conviction, the fact of fiancÃ©'s conduct giving rise to a conviction. Finally, mother asserts the appellate record requires her to be awarded child custody. This is an allegation of error in the trial court's discretion when it assessed the evidence and awarded child custody to the child's father.
Â¶10 A correct judgment in an equity proceeding "will be affirmed regardless of the reasons given for its rendition" because the appellate court is not bound by the legal reasoning or findings of the trial court expressed in its decree.[14] When a trial court's error of law prevented the parties from a constitutionally required due process opportunity to present facts in support of claims and defenses in equity, then appellate review requires remanding the matter to the trial court for additional proceedings[15] if the party aggrieved was denied a personal right and timely preserves the error in the District Court and on appeal with a supporting appellate record.
Â¶11 Even if the trial court erroneously considered the fiancÃ©'s previous conviction for domestic abuse, the decree awarding custody should be reversed on appeal only if: (1) The error caused prejudice to mother and resulted in a child custody award to the father contrary to equity principles and causing an incorrect equitable result; or (2) The award was against the clear weight of the evidence on the issue of the best interests of the child and created an incorrect result; or (3) The legal error by the trial court prevented mother from having an opportunity to present a legally cognizable claim or a defense relating to her claim for child custody. These first two issues require an appellate review of the entire evidentiary record.
Â¶12 We explain herein a truncated trial court record appearing before us as an appellate record prevents our review for a clear-weight-of-the-evidence type of error. Mother's appellate challenge to the trial court's consideration of her fiancÃ©'s alleged former conviction also lacks appellate force due to the absence of a complete evidentiary record on appeal. We must affirm the trial court as we now explain.
III.
Â¶13 Joshua Duke stated in his testimony he was concerned with his son "being around" Paige Duke's fiancÃ©. He testified the fiancÃ© "was convicted of domestic violence in the presence of his minor child." The identity of "his child" was not specified. Mr. Duke stated the fiancÃ©'s conviction occurred in June of 2015. No objection was made to this testimony. This topic was not addressed during Mr. Duke's cross examination.
Â¶14 This topic was raised during cross examination of the child's maternal grandfather: Do you have knowledge that [your daughter's fiancÃ©] . . . had been convicted of domestic violence?" Mother's counsel objected to the question: "I want to object to that because I have reason to believe that that's a lie. It's already been perpetrated on the stand by . . . [opposing counsel's client], and I'm not willing to let [opposing counsel] to repeat that lie." This objection was overruled. No additional reason was made for objecting to the testimony. The maternal grandfather stated he was aware of the conviction because his daughter's fiancÃ© had informed him of his conviction. He stated he had been concerned his daughter was engaged to someone who had been convicted of domestic violence in front of his [the fiancÃ©'s] child."
Â¶15 The topic was raised during direct examination of Paige Duke by her counsel. She was asked "And, to your knowledge, what is the status of any charge that was made against him for domestic assault?" She responded: "Six months." She was then asked "Was he ever convicted of that to your knowledge?" She responded: "No." She stated she had no concerns "about her child being around him [her fiancÃ©]."
Â¶16 The subject was raised again during her cross examination. She stated she began dating her then current fiancÃ© at the end of July 2015. She subsequently stated they were friends in July 2015 and not dating at that time. She then explained they began dating in December 2015, one month after her deposition in November 2015 wherein she stated they were not dating. She stated she had not seen any documents relating to a criminal conviction or probation relating to her fiancÃ©. She agreed she had previously reviewed the "exhibits in the binders that were submitted to her attorney in September 2016." However, she answered in the negative to the question whether she had seen a copy of her fiancÃ©'s "deferment out of Custer County in those pleadings marked as an exhibit." She simply denied any knowledge of her fiancÃ©'s alleged criminal history.
Â¶17 Mother's lawyer during the trial[16] objected to mother's cross examination on the subject of her knowledge relating to her fiancÃ©'s alleged criminal history. For example, her counsel stated the following.
Your Honor, I'm going to object. The charge - - I have reason to believe the charges have been dismissed and expunged. If they have been expunged, they're not subject to perusal by the Court. I'm sure that Counsel knows they have been too.
Mother was subsequently asked by father's counsel: "Does that not cause you any concern as a mother that you are now engaged to be married to someone who has pled guilty to domestic violence?" She responded: "No." Mother also testified on cross examination her fiancÃ©'s name and telephone number were listed by her on a form indicating persons who will provide care for her child. Mother's fiancÃ© was not called as a witness.
Â¶18 Mother argues the trial court misapplied two statutes, 43 O.S.2011 Â§ 112.2 and 22 O. S. Supp.2016 Â§ 19. Section 112.2 required a trial court in a child custody proceeding to consider if the person seeking child custody "is residing with a person who has been convicted of domestic abuse within the past five (5) years."[17] If this circumstance is present, then "there shall be a rebuttable presumption that it is not in the best interests of the child to have custody or guardianship granted to a person who: . . . is residing with a person convicted of domestic abuse within the past five (5) years."[18] In section 112.2 the phrase "domestic abuse" has the same meaning as defined in 22 O.S. Â§ 60.1.[19] At the time of the trial in the District Court, "domestic abuse' meant any act of physical harm, or the threat of imminent physical harm committed by an adult, emancipated minor, or minor child thirteen (13) years of age or older against another adult, emancipated minor or minor child who are family or household members or who are or were in a dating relationship.[20]
Â¶19 Mother argued the court could not consider her fiancÃ©'s conviction for domestic abuse because the conviction had been expunged pursuant to 22 O. S. Supp. 2016 Â§ 19.[21] Expungement is a sealing of a criminal record.[22] Section 19 includes the following.
D. Upon the entry of an order to seal the records, or any part thereof, the subject official actions shall be deemed never to have occurred, and the person in interest and all criminal justice agencies may properly reply, upon any inquiry in the matter, that no such action ever occurred and that no such record exists with respect to such person. . . .
22 O. S. Supp. 2016 Â§ 19 (D).
Counsel argues a conflict exists when a court simultaneously applies 43 O.S.2011 Â§ 112.2 and 22 O. S. Supp.2016 Â§ 19.
Â¶20 The clear and obvious language "subject official actions" in section 19 (D) includes a criminal conviction. The language of section 112.2 invoked by father requires the person to have been "convicted of domestic abuse" while section 19 states the "subject official actions" or conviction "shall be deemed never to have occurred." This language indicates if mother's fiancÃ© had an expunged conviction, then the conviction could not be used for creation of the section 112.2 rebuttable presumption.
Â¶21 The primary goal when reviewing a statute is to ascertain legislative intent, if possible, from a reading of the statutory language using its plain and ordinary meaning.[23] This is so because the plain words of a statute are deemed to express legislative authorial intent in the absence of any ambiguity or conflict in language.[24] If a literal construction of statutory language necessarily conflicts with language in the same statute or other statutes on the same or relative subjects, then the Court will construe the statutory language to effectuate the intent of the Legislature.[25] There is no ambiguity in the language before us.[26] The conflict herein does not involve a conflict in the statutory language, but what counsel perceive to be conflicting public policies imperfectly enacted by the Legislature; i.e., counsel claims the Legislature would not permit public policies involving children and expungement which allow a conviction for domestic abuse to be expunged for the purpose of a subsequent child custody adjudication. It is not this Court's role to review the wisdom or prudence of a legislative expression deciding a public policy.[27]
Â¶22 Mother states the trial court erroneously considered the conviction for creating a statutory rebuttable presumption. Even if we assume mother is correct, we do not agree the trial court's error on this point requires a reversal of the custody determination based on the record before us.
Â¶23 The trial judge stated he was concerned about the fact of the fiancÃ©'s previous domestic abuse apart from the conviction. A judicial decision on child custody involves a determination of the best interests of a child, and this includes evidence of the child's exposure to a person other than the child's parents when this third party may significantly affect the child as a result of a judicial custody decision. For example, a child's relationship to a new stepparent was considered by courts more than forty years ago when awarding custody to a parent,[28] and more recently certain stepparents have obtained statutory rights involving child custody[29] requiring courts to consider a child's relationship to stepparents. A parent-child bond may be created by an adult functioning as a parent,[30] and a stepparent residing with a child has an impact on the child by the mere physical proximity of the adult in the home. A trial court's consideration of a stepparent's previous behavior when that person will reside in the home of the potential custodial parent is consistent with legislative expressions of public policy requiring a court to consider custodial decisions involving someone who has committed domestic abuse and thereafter seeks custody of a child.[31]
Â¶24 The trial judge stated he was concerned neither party had offered any proof relating to the circumstances of the fiancÃ©'s previous domestic abuse behavior. Some authors have distinguished different types of domestic violence and argued for courts to consider the type of violence when making child custody decisions, and others have suggested caution by courts.[32] Some courts have partially followed this advice and used the nature of the particular violence as part of their decision when awarding custody, and they have included a review of the circumstances relating to the abuse.[33] The trial judge wanted to know as much as possible about the circumstances raised by the testimony presented to him. However, the trial judge's knowledge of the circumstances was limited by the trial strategies used by counsel for both parties.
Â¶25 Mother testified she had no knowledge of the conviction. The record on appeal contains no motion, pleading, or exhibit showing mother's fiancÃ© had a prior conviction for domestic abuse. The trial testimony appears to indicate a court document referencing the conviction was prepared by father's counsel for opposing counsel as a pretrial exhibit, but no such exhibit was admitted at trial and it does not appear in the appellate record. The record on appeal contains no motion, pleading, exhibit, or testimony showing an expungement, but arguments made to the trial court by counsel indicate a conviction and an expungement. The arguments made by mother's counsel were that no conviction existed because it had been expunged; and because of the expungement "the conviction did not occur" and it could not be considered by the trial court. Arguments by counsel are not evidence.[34] Father's counsel did not provide any proof at trial relating to the fiancÃ©'s previous domestic abuse behavior except the testimony elicited from father and the maternal grandfather stating the fiancÃ© had a previous conviction. Father did not call as witnesses either the fiancÃ© or the victim of the domestic abuse in order to testify on the issue of fiancÃ©'s past behavior apart from the alleged conviction. The trial court did not have evidence concerning the circumstances of fiancÃ©'s behavior other than the testimonial references to the conviction. The trial court made no specific findings classifying the behavior of the fiancÃ© for purposes of a child custody adjudication other than the rebuttable presumption and the alleged fact of the domestic event.
Â¶26 The trial was a nonjury or bench trial. We usually assume a trial court disregarded incompetent evidence when rendering a judgment, unless the contrary clearly appears.[35] The trial court references the conviction in its decree both as a conviction and as evidence of the behavior apart from a conviction. Mother's appellate brief characterizes the testimony of fiancÃ©'s conviction as "innuendo, hearsay, and unsupported, self-serving statements," but does not address this issue as a preserved trial court error subsequently raised as assigned appellate error with supporting authority challenging the admission of the testimony. An objection to admitting evidence must be made in the trial court.[36] We are not asked to review a preserved objection based upon the Oklahoma Evidence Code[37] and the challenged testimony in the dual context it was used by the trial court, (1) the fact of the conviction and (2) the fact of the abuse underlying the conviction.
Â¶27 Failure to properly object to admission of evidence at trial may be raised on appeal when fundamental error and prejudice are shown by an appellant.[38] Application of this standard does not relieve an appellant from the burden of showing the alleged improper evidence was both incompetent and prejudicial.[39] Appellant's burden of showing incompetent testimony includes a burden to supply authority on the issue.[40] In this proceeding, the burden includes the application of the appropriate provisions of the Oklahoma Evidence Code in the context of showing a violation of a substantial right[41] as well as explaining the challenged evidence caused a prejudicial adjudicated result where the prejudicial result does not rely on a post hoc ergo propter hoc analysis.[42] Mother's ability to show prejudice on appeal is hampered by the trial and appellate record.
Â¶28 We have explained the necessity for an appellant to show a probability of prejudice caused by challenged evidence when we have reviewed judgments on a jury verdict,[43] a decision on a motion for new trial,[44] and a judgment based on a nonjury or bench trial.[45] This showing of prejudice requires an appellant to frame an argument on the topic of prejudice in the context of all of the evidence used by the judge when adjudicating the causes of action. This is so because an erroneous decision to admit evidence in a nonjury trial will not be considered to be prejudicial when the other evidence is sufficient to support the judgment.[46]
Â¶29 Assuming but not deciding for the purpose of this appeal that the testimony of fiancÃ©'s prior conviction was not admissible, we are required to affirm the decree if it was otherwise supported by the clear weight of the additional evidence used by the trial court.[47] Mother's appellate brief recognizes additional evidence must be considered, and she has several citations to testimony in support of her request for custody. However, application of the clear-weight-of-the-evidence standard is frustrated herein due to the incompleteness of the appellate record caused by the parties' litigation strategies.
Â¶30 Trial was held in December 2016.[48] In a child custody controversy a guardian ad litem "may be appointed to objectively advocate on behalf of the child and act as an officer of the court to investigate all matters concerning the best interests of the child."[49] A guardian ad litem has a statutory duty to "present written factual reports to the parties and court prior to trial or at any other time as specified by the court on the best interests of the child...."[50] The trial court relied on the reports by the guardian ad litem (GAL) when determining custody of the child.
Â¶31 Father sought to admit the GAL's reports at trial and mother objected. Father released the GAL from his subpoena and further attendance at the end of the first day of trial. Mother argued she had a right to cross-examine the Gal and the GAL was not present for her to cross-examine.[51] Father argued mother had waived an objection to the reports being admitted during the pretrial stage of the proceeding. The appellate record does not contain a District Court Rule 5 Pretrial Conference Order specifying exhibits and witnesses.[52]
Â¶32 The trial court sustained mother's objection to the GAL's reports at the conclusion of the trial. However, when it issued its detailed minute order the trial court included language stating both mother and father had waived their rights to examine and cross-examine the GAL. The trial court also included language stating it would not be in the best interests of the child to ignore the GAL's reports. The minute order was filed and two months later a motion to settle the journal entry was filed. A hearing was held on the motion and a decree was filed. Mother then filed an application for an order nunc pro tunc for the purpose of the divorce decree including attached exhibits with child support calculations and a child visitation schedule. The application was granted and an order nunc pro tunc including the requested exhibits was filed. The application did not address the GAL's reports.
Â¶33 Nothing in the record suggests mother objected to the trial court using the GAL's reports when the court's decision was memorialized by its minute order and subsequent journal entry. The trial judge's order concluded a waiver to admission into evidence had occurred because the GAL was present in the courtroom and not called to testify by either party. No assigned appellate error suggests the trial court incorrectly concluded a waiver to their admission occurred.[53] The application for an order nunc pro tunc did not address whether the GAL's reports were made a part of the evidentiary record in the case by the judge's order utilizing the reports, or whether an additional order need be entered to make them part of the evidentiary record. The Designation of Record herein designates specific filings, the trial transcripts, and "all exhibits entered into evidence and/or all materials presented to and considered by the court during the proceedings" on the two specific days of trial. The designation does not list the GAL's reports.
Â¶34 A trial court's record "constitutes the only means for communication of its proceedings to an appellate court."[54] The Due Process provision of the Oklahoma Constitution[55] prohibits a court from adjudicating a legal cause of action based upon evidence which the trial court also requires to be excluded from the court's evidentiary record.[56] No assigned error suggests the trial court used a procedure which denied mother an opportunity to include the GAL reports as part of the trial court record for the purpose of preserving them in an appellate record.
Â¶35 An appellant has the undivided responsibility for producing an appellate record necessary to show the error in a trial court's decree.[57] An appellant must include in the record on appeal "all materials necessary for corrective relief."[58] This principle applies to an appellant arguing an award of child custody was contrary to the child's best interests.[59] The appellate standard of review requires weighing all of the evidence. A trial court record necessary for this appeal includes all of the evidence the trial court used to adjudicate child custody. This applies to a party challenging a custody decree based, in part, on reports made by a GAL. We are asked to review the correctness of the trial court's decision on child custody when the trial court's decision was based on GAL reports which are not before this Court.
Â¶36 Mother asks us to review the evidence. Testimony from the witnesses was conflicting on certain issues. For example, the evidence was conflicting on the extent of time mother and father provided primary care for the child when the family resided as a unit in Guthrie. The parties disagreed on which party was responsible for dressing and feeding the child in the morning and then transporting him to morning pre-K classes. Father testified mother's work schedule conflicted with transporting the child to and from classes. Mother pointed to the maternal grandmother providing child care, and father's work schedule during the first two years of the child's life. Mother testified that when the child was approximately two years old she changed employment, and both she and father transported the child from her mother's residence to the family home at the end of the day. Father testified he picked-up the child because mother's work schedule and her after-work activities delayed her presence at home. One witness testified mother was observed on many occasions picking-up the child at the conclusion of a mothers' day out program which occurred on Fridays, a day which mother often did not work. Father testified he also changed employment when the child was approximately two years old. He testified he began working in his family's local business in Guthrie to enable him to be with the child on a daily basis. The trial court also heard testimony relating to grandparents residing in Guthrie and the extent to which they provided child care assistance.
Â¶37 The trial judge's minute order states: "Much of the evidence was confusing and the parties at times appeared to disregard the truth." A trial court determines which testimony it chooses to believe, and the trial court has the advantage over this Court in observing the behavior and demeanor of the witnesses.[60] We decline mother's invitation for us to expand our traditional role when reviewing a decree in equity, and we decline the opportunity to decide which conflicting testimony to believe and which not to believe and disregard.
Â¶38 The trial judge had before him a divorce proceeding involving a minor child with both father and mother seeking sole custody. The trial judge stated he was guided by the best-interests-of-the-child standard in awarding custody to the child's father. The record before us shows his attempt to apply that standard. In Ray v. Ray, supra, a trial record lacked proof critical to support a monetary award of support alimony in the trial court.[61] Contrary to that circumstance, in this case the trial judge heard testimony concerning the best interests of the child and considered reports from the GAL. There is no insufficiency in evidence critical to support a child custody award. The alleged error is that the weight of the evidence supports one party over another for receiving child custody. The record is insufficient to review this claim.
IV. Conclusion
Â¶39 The parties had an opportunity in the trial court to present their evidence and make a complete trial court record and a complete appellate record. Mother's assigned error challenging the trial court's consideration of her fiancÃ©'s alleged conviction may not be reviewed on appeal since the error requires us to consider its prejudicial effect in relation to the entire evidentiary record considered by the trial judge, which we do not have before us. Mother's assignment of error challenging the conclusion it was in the child's best interests for custody to father requires us to apply a clear-weight-of-the-evidence standard which in turn requires all of the evidentiary record to be before us. All of the record is not before us.
Â¶40 We hold: (1) Application of the clear-weight-of-the-evidence appellate standard to determine if a child custody order was based upon insufficient evidence must be reviewed on appeal by reviewing all of the evidence used by the trial court when adjudicating custody; (2) When all of the evidence used by the trial court to adjudicate custody is not before the appellate court the clear-weight-of-the-evidence standard may not be applied, and if the parties had an opportunity to preserve the assigned appellate error in the trial and appellate record but failed to do so, the district court's order must be affirmed.

Â¶41 CONCUR: WINCHESTER, EDMONDSON, and KANE, JJ; REIF, S.J., and BARNES, S.J.
Â¶42 DISSENT: GURICH, C.J., (I would vacate and remand for a new trial.); DARBY, V.C.J.; and KAUGER, J. (joins Gurich, C.J.); and COMBS, J. (joins Gurich, C.J.). 
Â¶ 43 RECUSED: COLBERT, J.
Â¶44 NOT PARTICIPATING: ROWE, J.

FOOTNOTES

[1] The Honorable R. L. Hert, Special Judge, of the District Court of Payne County, was assigned to hear the matter by the Honorable Phillip C. Corley, District Judge, of the District Courts of Logan and Payne Counties.

[2] Osage Nation v. Bd. of County Comm'rs of Osage Cnty., 2017 OK 34, n. 20, 394 P.3d 1224, citing Worsham v. Nix, 2006 OK 67, Â¶ 28, 145 P.3d 1055, 1064 (failure to brief an issue with authority is a waiver of an assignment of error relating to that issue). See also Matter of Estate of Vose, 2017 OK 3, n.1, 390 P.3d 238, 242 (argument without supporting authority will not be considered).

[3] Green v. Oklahoma Tax Commission, 1940 OK 360, 107 P.2d 180, 181 (Syllabus by the Court), (an additional proposition of law presented by an appellant for the first time in a reply brief, and which is not in reply to new matter or independent propositions advanced by the appellee in an answer brief, will not ordinarily be considered by the Supreme Court). Cf. Cox Oklahoma Telecom, LLC v. State ex rel. Oklahoma Corp. Comm., 2007 OK 55, Â¶33, 164 P.3d 150, 162-163 (new propositions of law and assignments of error should not be raised for the first time in an appellate reply brief); In re M.K.T., 2016 OK 4, Â¶ 88, 368 P.3d 771, 799 (appellate reply brief may not be used for making facts appear for the first time in the judicial record).

[4] In re M.K.T., 2016 OK 4, at Â¶ 86, 368 P.3d at 798 (appellee's legal issues in support of a District Court's judgment or decree and which are presented in an appellate answer brief are limited in scope by their application to those facts shown in the certified record on appeal).

[5] Braitsch v. City of Tulsa, 2018 OK 100, Â¶ 2, 436 P.3d 14,17. See also Christian v. Christian, 2018 OK 91, Â¶ 5, 434 P.3d 941, 942 ("when this Court is faced with a question of statutory interpretation, we apply a de novo standard of review").

[6] In re City of Durant, 2002 OK 52, Â¶ 2, 50 P.3d 218, 219-220.

[7] Laubenstein v. Bode Tower, L.L.C., 2016 OK 118, Â¶ 9, 392 P.3d 706, 709 (In a case of equitable cognizance, a judgment will be sustained on appeal unless it is found to be against the clear weight of the evidence or is contrary to law or established principles of equity.), citing McGinnity v. Kirk, 2015 OK 73, Â¶ 8, 362 P.3d 186, 190.

[8] Some of our opinions discuss our review of an appealable order in equity and it will not be disturbed on appeal in the absence of "prejudicial error" or when it is against the clear weight of the evidence. Emerson v. Youngs, 1962 OK 68, 370 P.2d 25, 28, quoting Walden v. Potts, 1924 OK 55, 222 P. 549, 550 (Syllabus by the Court).

[9] A. A. Murphy. Inc. v. Banfield, 1961 OK 197, 363 P.2d 942, 945 (In a suit of equitable cognizance, this Court will examine the entire record and weigh the evidence, but unless the decree of the lower court is found to be clearly against the weight of the evidence or contrary to established principles of equity jurisprudence, it will not be disturbed on appeal.); Cleary Petroleum Corp. v. Harrison, 1980 OK 188, 621 P.2d 528, 533 (appellate review determines whether the decree is (1) against the clear weight of the evidence or (2) contrary to law).

[10] Foshee v. Foshee, 2010 OK 85, Â¶ 18, 247 P.3d 1162, 1169, Â¶ 18, (explaining upon termination of joint custody the trial court proceeds as if it is making an initial custody decision, and an appellant must show on appeal the trial court's custody decision is "erroneous and contrary to the child's best interests"), quoting Daniel v. Daniel, 2001 OK 117, Â¶ 21, 42 P.3d 863, 871.
See also 43 O.S. 2011 Â§ 109(A) at note 13 infra. See also Rowe v. Rowe, 2009 OK 66, Â¶ 3, 218 P.3d 887, 889 (in a divorce action, the trial court is vested with discretion in awarding custody and visitation, but the best interests of the child must be a paramount consideration), citing Daniel v. Daniel, 2001 OK 117 Â¶ 21, 42 P.3d 863, 871.

[11] Watkins v. McComber, 1952 OK 422, 2566 P.2d 158, 159 (Syllabus by the Court) ("In a case of equitable cognizance the judgment of the trial court carries with it a finding of all facts necessary to support it, which could have been found from the evidence, and the judgment will not be set aside unless clearly against the weight of the evidence.").

[12] Hedges v. Hedges, 2002 OK 92, Â¶ 23 & n. 37, 66 P.3d 364, 372 ("If the record is sufficient, this court will--in an appeal from an equity decision--render that decree which the chancellor should have entered."), citing Larman v. Larman, 1999 OK 83, Â¶ 18, 991 P.2d 536, 542--543.

[13] 43 O.S. 2011 Â§ 109(A): "In awarding the custody of a minor unmarried child or in appointing a general guardian for said child, the court shall consider what appears to be in the best interests of the physical and mental and moral welfare of the child."
See Schnedler v. Lee, 2019 OK 52, Â¶ 11, 445 P.3d 238, 242 (court supervision over the welfare of children is equitable in character), quoting In re Bomgardner, 1985 OK 59, 711 P.2d 92, 97.

[14] Bankhoff v. Bd. of Adjustment of Wagoner Cnty., 1994 OK 58, 875 P.2d 1138, 1143.

[15] Hedges v. Hedges, 2002 OK 92 at Â¶ 23, 66 P.3d at 373 (if necessary facts to adjudicate a legally cognizable claim or defense in equity were prevented from insertion into the judicial record by trial court legal error, and the trial court did not make findings necessary to those claims and defenses; then the matter must be remanded to the trial court for a proper adjudication of those facts as they relate to the claim or defense; and this is so because the Supreme Court's appellate cognizance in equity does not include making or adjudicating original findings of facts necessary to show elements of a claim or defense in equity and which are missing from the judicial record).

[16] Appellate counsel for Paige Duke in the present proceeding did not represent her during the trial in the District Court.

[17] 43 O.S. 2011 Â§ 112.2 states in part: "A. In every case involving the custody of, guardianship of or visitation with a child, the court shall consider for determining the custody of, guardianship of or the visitation with a child whether any person seeking custody or who has custody of, guardianship of or visitation with a child... 7. Is residing with a person who has been convicted of domestic abuse within the past five (5) years...."

[18] 43 O.S. 2011 Â§ 112.2 states in part: "B. There shall be a rebuttable presumption that it is not in the best interests of the child to have custody or guardianship granted to a person who:... 7. Is residing with a person convicted of domestic abuse within the past five (5) years...."

[19] 43 O.S. 2011 Â§ 112.2 states in part: "E. For purposes of this section:...2. 'Domestic abuse' has the same meaning as such term is defined in Section 60.1 of Title 22 of the Oklahoma Statutes...."

[20] 22 O.S.2011 Â§ 60.1(1) stated: "'Domestic abuse' means any act of physical harm, or the threat of imminent physical harm which is committed by an adult, emancipated minor, or minor child thirteen (13) years of age or older against another adult, emancipated minor or minor child who are family or household members or who are or were in a dating relationship."
Section 60.1 was amended by Laws 2019, c. 200, Â§ 2, eff. Nov. 1, 2019, and the definition for domestic abuse states: "2. 'Domestic abuse' means any act of physical harm, or the threat of imminent physical harm which is committed by an adult, emancipated minor, or minor child thirteen (13) years of age or older against another adult, emancipated minor or minor child who is currently or was previously an intimate partner or family or household member...."

[21] Section 18 was amended in 2015, 2016, 2018, and 2019. Section 19 was amended in 2015 and 2016. The 2016 amendment was effective Nov. 1, 2016, by Laws 2016, c. 348, Â§ 2. The trial was held in December 2016. Based upon comments made by counsel for both parties the expungement may have occurred prior to November 1, 2016. Counsel rely on the 2016 version of sections 18 and 19, and we also use the 2016 version of section 19.

[22] 22 O. S. Supp. 2016 Â§ 18 (B): "For purposes of this act [22 O. S. Supp.2016 Â§Â§ 18,19], 'expungement' shall mean the sealing of criminal records, as well as any public civil record, involving actions brought by and against the State of Oklahoma arising from the same arrest, transaction or occurrence."

[23] In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, Â¶ 9, 326 P.3d 496, 501.

[24] In re Initiative Petition No. 397, etc., 2014 OK 23, Â¶ 9, 326 P.3d at 501.

[25] Raymond v. Taylor, 2017 OK 80, Â¶ 12, 412 P.3d 1141, 1145. See also Antini v. Antini, 2019 OK 20, Â¶ 12, 440 P.3d 57, 60 (the meaning of language in a statute is harmonized with related statutes) that address the same subject matter are generally to be construed in a manner that imparts intelligent effect to each and reconciles any differing provisions); Mustain v. Grand River Dam Authority, 2003 OK 43, Â¶ 23, 68 P.3d 991, 999 (statutes addressing the same subject matter are to be construed in a manner which reconciles differing provisions and imparts to each of them an intelligent effect).

[26] In re Initiative Petition No. 397, etc., 2014 OK 23, Â¶ 9, 326 P.3d at 501, (the test for ambiguity in a statute is whether the statutory language is susceptible of more than one reasonable interpretation).

[27] Wylie v. Chesser, 2007 OK 81, Â¶ 19, 173 P.3d 64, 71.

[28] See, e.g., Marshall v. Marshall, 1976 OK 127, 555 P.2d 598 (when mother did not want custody the father was awarded custody on appeal because no evidence was presented challenging father's unfitness or the unfitness of his then present wife as a stepparent); Jeff Atkinson, Criteria for Deciding Child Custody in the Trial and Appellate Courts, 18 Fam. L.Q. 1, 34 (a publication by the American Bar Association noting thirty-one court opinions from the year 1982 where a stepparent relationship was used by courts in support of a custody decision).

[29] See, e.g., Kohler v. Chambers, 2019 OK 2, Â¶Â¶ 9, 15, 435 P.3d 109, 112-113, 114 (application of Oklahoma Deployed Parents Custody & Visitation Act [43 O.S. 2011 Â§Â§ 150-150.10] and noting parent was not a "deploying parent" for the purpose of transferring custody and visitation rights).

[30] See, e.g., In re M.K.T., 2016 OK 4, Â¶ 66, 368 P.3d 771, 792 (the Adoption and Safe Families Act of 1997, [Pub. L. No. 105--89, 111 Stat. 2115, as codified in noncontiguous sections of 42 U.S.C.] recognizes a parent-child bond may be created in foster care relationships when an adult is functioning as a parent for the child).

[31] 43 O.S.2011 Â§ 109.3:
"In every case involving the custody of, guardianship of or visitation with a child, the court shall consider evidence of domestic abuse, stalking and/or harassing behavior properly brought before it. If the occurrence of domestic abuse, stalking or harassing behavior is established by a preponderance of the evidence, there shall be a rebuttable presumption that it is not in the best interest of the child to have custody, guardianship, or unsupervised visitation granted to the person against whom domestic abuse, stalking or harassing behavior has been established."

[32] Joan S. Meier, Dangerous Liaisons: A Domestic Violence Typology in Custody Litigation, 70 Rutgers U.L. Rev. 115 (2017) (urging court's to exercise caution if deciding to adopt a particular domestic violence typology); Joan B. Kelly & Michael P. Johnson, Domestic Violence: Differentiation Among Types of Intimate Partner Violence: Research Update and Implications for Interventions, 46 Fam. Ct. Rev. 476, 476-78 (2008) (stated intimate partner violence may be differentiated with respect to partner dynamics, context, and consequences; and authors provided as examples: coercive controlling violence, violent resistance, situational couple violence, and separation-instigated violence); Clare Huntington, The Empirical Turn in Family Law, 118 Colum. L. Rev. 227, n. 139, 252 (2018) (citing Nicholson v. Williams, 203 F.Supp.2d 153, 197-198 (E.D.N.Y. 2002), and noting opinions by five experts relating to potential adverse effects for children in a home where intimate partner abuse had occurred).

[33] See, e.g., Mallory D. v. Malcolm D., 290 P.3d 1194, 1201-1202 (Alaska 2012) (court characterized discrete instances of domestic violence as "situational" and concluded neither party was less likely than the other to perpetrate domestic violence); Jordan v. Jordan, 14 A.3d 1136, 1149 (D.C. 2011) (court relied upon an expert opinion the father's past conduct was "situational and did not predict future violence"); Malenko v. Handrahan, 979 A.2d 1269, 1272 (Me. 2009) (GAL stated the domestic violence was "situational couple violence," not typical because the mother had more power and control, and there was a lack of evidence the father had been inappropriate with any child); Cesare v. Cesare, 154 N.J. 394, 713 A.2d 390, 395 (1998) (a particular history can greatly affect the context of a domestic violence dispute, trial courts must weigh the entire relationship between the parties, and a court may consider evidence of a party's prior abusive acts regardless of whether those acts have been the subject of a domestic violence adjudication).

[34] Young v. Station 27, Inc., 2017 OK 68, n. 5, 404 P.3d 829. See also Crest Infiniti, II, LP v. Swinton, 2007 OK 77, Â¶ 10, 174 P.3d 996, 1002 (unsworn statements by counsel in both a motion and a response by opposing counsel do not constitute evidence).

[35] Maras v. Smith, 1966 OK 231, 420 P.2d 483, 485. Cf. Taylor v. Taylor, 211 F.2d 794, 797 (8th Cir.1954) ("It has long been the practice in the federal courts that [i]n a nonjury case, the presumption is that the trial court considered only the competent evidence and disregarded all evidence which was incompetent.") (internal quotations omitted).

[36] Callison v. Callison, 1984 OK 7, 687 P.2d 106, 112 (in a proceeding commenced as a divorce action a party waived error as to admission of evidence when the party failed to use an available Oklahoma Evidence Code procedure for objecting to admission).

[37] 12 O.S. 2011 Â§Â§ 2101- 3011.

[38] Matter of J.L.O., IV, 2018 OK 77, Â¶ 25, 428 P.3d 881, 889. See also Covel v. Rodriguez, 2012 OK 5, Â¶Â¶ 8-10, 272 P.3d 705, 710 ("the fact that evidence may be incompetent under one or more exclusionary rules of evidence does not destroy its probative effect if it is admitted without objection;" and failing to object the error is waived on appeal in the absence of a fundamental error having a substantial effect on the rights of a party).

[39] Rogers v. Citizens National Bank in Okmulgee, 1962 OK 176, 373 P.2d 256, 258, explaining the holding in Benzel v. Pitchford, 1952 OK 217, 245 P.2d 1131 ("we held a cause will not be reversed for admission of incompetent evidence if it does not affirmatively appear that such admission resulted prejudicially to the interest of the objecting party").

[40] Lee v. Bueno, 2016 OK 97, Â¶ 37, 381 P.3d 736, 749.

[41] 12 O.S. 2011 Â§ 78: "The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

[42] An improper post hoc ergo propter hoc (after this, because of this) analysis to show prejudice as to a judicial outcome is one which merely asserts the challenged evidence was admitted and followed by a judgment contrary to the party's request for relief, and fails to explain the weight of the alleged prejudicial error in relation to the rest of the evidence. See, e.g., Boyle v. ASAP Energy, Inc., 2017 OK 82, n. 47, 408 P.3d 183 (noting a post hoc or temporal sequence is logically insufficient to show causation); Fike v. Peters, 1935 OK 1009, 52 P.2d 700, 704 (alleged prejudicial testimony which was admitted even if "technically inadmissible," "it could not have affected the substantial rights of the defendant"... because a review of the record shows the alleged errors were not of a nature "which might have changed the final result").

[43] Hames v. Anderson, 1977 OK 191, 571 P.2d 831, 833 (when reviewing a judgment on a jury verdict the Court stated "for reversal, there must be prejudice as well as the evidence being incompetent"); Digital Design Group, Inc. v. Information Builders, Inc., 2001 OK 21, Â¶ 36, 24 P.3d 834, 845 (it is error for the trial judge to submit an issue not supported by competent evidence to the jury; but jury verdict will not be disturbed because of error in an instruction unless the error was prejudicial to the complaining party, as measured by a probability that the finder of fact was misled and thereby reached a different result but for the error); Bouziden v. Alfalfa Elec. Co-op, Inc., 2000 OK 50, Â¶ 35, 16 P.3d 450, 459 (same); City of Pawhuska v. Martin, 1931 OK 462, 1 P.2d 638, 639 (if admitting testimony was error, it was harmless because it did not affect the jury's verdict).

[44] Akin v. Missouri Pacific R. Co., 1998 OK 102, Â¶ 34, 977 P.2d 1040, 1053-1054 ("the court has also held that it is reversible error for a trial court to grant a new trial when the decision complained of was not prejudicial to the outcome of the trial").

[45] Kahre v. Kahre, 1995 OK 133, 916 P.2d 1355, 1365 (in an appeal from an order adjudicating child custody the Court stated "before any claimed error concerning the admission or exclusion of evidence will be deemed reversible error, an affirmative showing of prejudicial error must be made"); Mulkey v. Blankenship, 1976 OK 194, 558 P.2d 398, 399 (erroneous trial court rulings in a proceeding where the trial court denied plaintiffs' request for equitable relief will be insufficient to require reversal when the rulings were not prejudicial to the complaining party); Hankins v. Hankkins, 1944 OK 349, 155 P.2d 720, 722 (in a proceeding for imposition of a resulting trust the judgment was reversed when all of the evidence showed the trial court's exclusion of certain evidence might have changed the result if it had been admitted and was prejudicial to the aggrieved party). Cf. Camp v. Camp, 1945 OK 234, 163 P.2d 970, 972 (trial court's judgment will not be reversed when supported by the record as a whole and it is immaterial if the trial court states an additional reason for its judgment which may not apply).

[46] Kahre v. Kahre, 1995 OK 133, 916 P.2d at 1365, citing Phillips v. Thompson, 1964 OK 18, 389 P.2d 473, 476 (error of admitting evidence was insufficient for a reversal in a nonjury case where additional evidence was sufficient to support the judgment). See also Kendall v. Sharp, 1967 OK 66, 426 P.2d 707, 709 (no prejudicial error occurred when alleged error in admission of hearsay evidence was corroborated by other evidence admitted in the bench trial); Stekoll v. Wilson, 1952 OK 355, 250 P.2d 454, 457 ("judgment rendered in a case heard without the intervention of a jury will not be reversed on account of admission of incompetent evidence unless the record discloses that there was no competent evidence to affirm it or in some way shows affirmatively that the improper evidence affected the result").

[47] Boughan v. Herington, 1970 OK 125, 472 P.2d 434, 436-437, quoting LaDoux v. Bohn, 1966 OK 223, 420 P.2d 501), (when a judgment is not clearly against the weight of the evidence in a bench trial the Supreme Court will not assume that the judgment was necessarily based on allegedly incompetent evidence absent a showing the judgment requires the challenged evidence). See Maras v. Smith, 1966 OK 231, 420 P.2d 483 ("There are many previous holdings of this Court that a presumption exists on appeal from a non-jury case that the trial court disregarded all incompetent evidence in rendering its judgment, unless the contrary clearly appears.").

[48] At the time of the GAL's appointment and the District Court trial, 43 O.S.2011 Â§ 107.3 was in effect except for language in the statute previously determined to be unconstitutional. Kelley v. Kelley, 2007 OK 100, Â¶Â¶ 8-10, 175 P.3d 400, 404-405 (regardless of former 43 O.S.Supp.2006 Â§ 107.3(A)(2)(e) due process requires providing an opportunity to cross-examine the GAL); Rowe v. Rowe, 2009 OK 66, Â¶ 4, 218 P.3d 887, 889-890 (in Kelley we "overturned that part of Â§ 107.3(A)(2)(e) that provided that the guardian ad litem is not subject to discovery pursuant to the Oklahoma Discovery Code").

[49] 43 O.S.2011 Â§ 107.3:
"A. 1. In any proceeding when the custody or visitation of a minor child or children is contested by any party, the court may appoint an attorney at law as guardian ad litem upon motion of the court or upon application of any party to appear for and represent the minor children.
2. The guardian ad litem may be appointed to objectively advocate on behalf of the child and act as an officer of the court to investigate all matters concerning the best interests of the child. In addition to other duties required by the court and as specified by the court, a guardian ad litem shall have the following responsibilities: . . .
d. present written reports to the parties and court prior to trial or at any other time as specified by the court on the best interests of the child that include conclusions and recommendations and the facts upon which they are based...."

[50] 43 O.S.2011 Â§ 107.3(A)(2)(d), supra, note 49.

[51] A party in a proceeding adjudicating child custody possesses a due process right to cross-examine a GAL's recommendation for child custody. Kelley v. Kelley, 2007 OK 100, Â¶Â¶ 2-3, 175 P.3d 400, 403. See also Rowe v. Rowe, 2009 OK 66, Â¶ 4, 218 P.3d 887, 889-890 (stating our holding in Kelley).

[52] 12 O.S. Supp. 2013, Ch. 2, App., Rules for District Courts of Oklahoma, Rule 5, Pretrial Proceedings.

[53] For example, no argument and authority is submitted on whether mother's rights relating to the GAL's reports were anything other than personal procedural rights subject to waiver by the litigation strategy pursued by counsel. Tucker v. Cochran Firm-Criminal Defense Birmingham L.L.C., 2014 OK 112, n. 16, 341 P.3d 673, 680 (personal and private rights may be waived but the law involving the power or structure of government may not be waived); Barringer v. Baptist Healthcare of Oklahoma, 2001 OK 29, Â¶Â¶ 23-26, 22 P.3d 695, 701 (in the context of a party's legal right seeking contribution, Court noted question of waiver is one of fact but may become a question of law when the facts concerning waiver are not disputed and subject to only one interpretation).

[54] Cumbey v. State, 1985 OK 36, 699 P.2d 1094, 1099 ("A trial court's record constitutes the only means for communication of its proceedings to an appellate court.").

[55] Okla. Const. Art. 2 Â§ 7: "No person shall be deprived of life, liberty, or property, without due process of law."

[56] La Bellman v. Gleason & Sanders, Inc., 1966 OK 183, 418 P.2d 949, 953 ("The jurisdiction of the trial court is limited to the particular subject matter presented by the pleadings, and any judgment which is beyond the issues framed by the pleadings and proof is in excess of the court's jurisdiction and is void.") (emphasis added). See also Oklahoma City v. Robinson, 1937 OK 16, 65 P.2d 531, quoting Gille v. Emmons, 58 Kan. 118, 48 P. 569, 570 (1897) in turn quoting Munday v. Vail, 34 N.J.L. 418, 422 (1871) (A judgment upon a matter outside of the issues pled and tried of record must, of necessity, be altogether arbitrary and unjust, as it concludes a point upon which the parties have not been heard.).

[57] In re M.K.T., 2016 OK 4, n. 98, 368 P.3d 771, 799; Pracht v. Oklahoma State Bank, 1979 OK 43, 592 P.2d 976, 978. See also Chamberlin v. Chamberlin, 1986 OK 30, 720 P.2d 721, 724 ("It is the duty of the appealing party to procure a record that is sufficient to obtain the corrective relief sought").

[58] Ray v. Ray, 2006 OK 30, Â¶ 12, 136 P.3d 634, 637.

[59] Fleck v. Fleck, 2004 OK 39 Â¶ 9, 99 P.3d at 240 ("the burden is on the appellant to produce a record sufficient to show that the custody award was contrary to the child's best interest") citing, Daniel v. Daniel, 2001 OK 117, Â¶ 21, 42 P.3d 863, 871 ("The burden is upon the party appealing from the custody and visitation award to show that the trial court's decision is erroneous and contrary to the child's best interests."). See Gorham v. Gorham, 1984 OK 90, n. 4, 692 P.2d 1375, 1378 (one who challenges the trial court's determination on custody, as to the best interests of the child, must put forth the evidence presented upon which the party relies to establish the trial court's error and the party must affirmatively show how this evidence shows the trial court's decision to have been contrary to the child's best interests").

[60] Kahre v. Kahre, 1995 OK 133, 916 P.2d 1355, 1360. See also Daniel v. Daniel, 2001 OK 117, Â¶ 22, 42 P.3d 863, 871 (the trial court is better able to determine controversial evidence by its observation of the partes, the witnesses, and their demeanor).

[61] Ray v. Ray, 2006 OK 30, Â¶ 15, 136 P.3d at 638.