GURICH, C.J.
 

 Facts & Procedural History
 

 ¶ 1 Kelley P. Kohler (Father) and Carolynn L. Chambers (Mother) are the biological parents of R.L.K., born April 17, 2012. Father filed a petition seeking to establish parentage in February 2014. On December 22,
 
 *111
 
 2016, the parties entered an Agreed Decree of Paternity and Joint Custody Plan, which awarded the parties joint custody and equal visitation time with R.L.K.
 

 ¶ 2 On July 27, 2017, Father received an order from the Department of Defense Military Entrance Processing Station, directing him to report to initial active duty for training (IADT).
 
 [1]
 
 Under this order, Father was required to complete nine (9) weeks of basic training at Fort Jackson, South Carolina, and an additional nineteen (19) weeks of advanced individual training (AIT) in Fort Lee, Virginia.
 
 [2]
 
 During these periods of training, Father was not permitted to travel with his spouse and children.
 

 ¶ 3 In August 2017, Father filed a pleading entitled "Motion to Confirm Deployed Servicemember's Custodial Rights," urging application of the Oklahoma Deployed Parents Custody and Visitation Act (ODPCVA), 43 O.S.2011 §§ 150 to 150.10.
 
 [3]
 
 Specifically, Father alleged that he was being deployed, as defined by the ODPCVA; and therefore, he was entitled under the Act to assign his custody/visitation rights with R.L.K. to his current spouse. Following an expedited hearing, the trial court sustained the motion, concluding twenty-eight (28) weeks of mandatory training qualified as deployment under the ODPCVA. Accordingly, the trial judge authorized Father's wife to exercise visitation with R.L.K. during his absence. A journal entry memorializing this decision was filed on August 25, 2017.
 

 ¶ 4 Mother promptly filed a motion to vacate the judgment, requesting the lower court to reconsider its decision. As her sole basis for relief, Mother argued that the trial judge erred as a matter of law by finding Father was a "deploying parent" as defined by the ODPCVA. The trial court denied Mother's motion, upholding its previous ruling that Father's absence pursuant to military orders entitled him to relief under the ODPCVA.
 

 ¶ 5 Mother appealed the trial court's original order finding Father's attendance of basic training and advanced individual training satisfied the definition of deployment. We retained the case to address this first impression question under the ODPCVA, and now reverse the lower court's ruling.
 

 Standard of Review
 

 ¶ 6 To resolve the issue presented, we must analyze the ODPCVA and interpret its relevant provisions. When the Court examines a statute, our primary goal is to determine legislative intent through the "plain and ordinary meaning" of the statutory language.
 
 In re Initiative Petition No. 397
 
 ,
 
 2014 OK 23
 
 , ¶ 9,
 
 326 P.3d 496
 
 , 501. Because the legislature expresses its purpose by words, the plain meaning of a statute is deemed to express legislative authorial intent in the absence of any ambiguous or conflicting language.
 

 Id
 

 .
 
 When evaluating statutory language for ambiguity, the Court considers whether the wording is susceptible to more than one reasonable interpretation.
 

 Id
 

 .
 
 Because statutory construction poses a question of law, the correct standard of review is de novo.
 
 Legarde-Bober v. Okla. State Univ.
 
 ,
 
 2016 OK 78
 
 , ¶ 5,
 
 378 P.3d 562
 
 , 564.
 

 Analysis
 

 ¶ 7 Of course our paramount concern in any proceeding involving custody or visitation is the best interests of the child(ren).
 
 Birtciel v. Jones
 
 ,
 
 2016 OK 103
 
 , ¶ 7,
 
 382 P.3d 1041
 
 , 1043. The sole legal question in this appeal is whether a military servicemember,
 
 *112
 
 who has received orders to report to basic training and advanced individual training, and is therefore temporarily separated from his or her children, is a "deploying parent" for purposes of the ODPCVA. Mother argues that the statute applies only to parents who have been "order[ed] to another location in support of combat, contingency operation, or natural disaster," and not those parents who receive orders solely to attend initial active duty for training. Father maintains his mandatory attendance of both training phases was the equivalent of "deployment" under the ODPCVA.
 

 ¶ 8 The Uniform Law Commission formally adopted the Uniform Deployed Parents Custody and Visitation Act (UDPCVA) in July of 2012. According to the UDPCVA's Prefatory Note, the proposed enactment was designed to address unique issues which arise during the deployment of both civilian and military personnel, including: maintenance of the parent-child bond during a parent's temporary absence due to deployment; resuming normal custody and visitation following a service member's return from deployment; providing expedited procedures for resolving temporary custody arrangements due to the sudden impact of deployment orders; to prevent a deployed parent from being penalized as a result of serving his or her country; and fostering consistency and predictability among the states through application of uniform standards for deploying parents. Unif. Deployed Parents Custody & Visitation Act,
 
 Prefatory Note
 
 (2012). Very similar to early drafts of the UDPCVA, the ODPCVA was enacted by the Oklahoma Legislature during the 2011 session, and became effective May 26, 2011.
 
 [4]
 

 ¶ 9 In the event a parent is deployed
 
 and
 
 he or she seeks relief under the ODPCVA, the deploying parent is entitled to transfer his or her visitation rights to a step-parent, a designated family member, or another designated individual. 43 O.S.2011 §§ 150.3, 150.8.
 
 [5]
 

 *113
 
 The Act also creates certain rebuttable presumptions, including that it is "in the best interests of the child" for a stepparent, designated family member or another designated person to exercise the deployed party's parental duties or visitation.
 
 [6]
 
 43 O.S.2011 § 150.8(D)(1) and (2).
 

 ¶ 10 In order to invoke the ODPCVA's protections in the present case, Father was required to show he was a deploying parent. Title 43 O.S.2011 § 150.1(4) defines "deploying parent" as follows:
 

 [A] legal parent of a minor child or the legal guardian of a child, who is a member of the United States Armed Forces, civilian personnel or contractor serving in designated combat zones and
 

 who is deployed or has been notified of an impending deployment
 

 .
 

 (Emphasis added).Obviously to ascertain the foregoing question, we must ascertain whether Father was deployed or subject to an impending deployment. Section 150.1(5) sets forth the meaning of "deployment" under the ODPCVA:
 

 [T]he temporary transfer of a servicemember in compliance with official orders to another location in support of
 
 combat
 
 ,
 
 contingency operation
 
 , or
 
 natural disaster
 
 requiring the use of orders for a period of more than thirty (30) consecutive days, during which family members are not authorized to accompany the servicemember at government expense.
 

 43 O.S.2011 § 150.1 (emphasis added)
 

 ¶ 11 It is undisputed Father was a servicemember and he received military orders requiring his temporary transfer for more than thirty days to another location; and during this period, Father's family members were not authorized to accompany him at government expense. Additionally, the parties agree Father was not acting in support of a "contingency operation" or "natural disaster." Thus, our inquiry is limited to whether Father's temporary transfer for basic training and advanced individual training was "in support of combat." However, the legislature did not define the phrase "in support of combat."
 

 ¶ 12 If we utilize the rudimentary meanings for the terms "in support of combat," the phrase takes on an exceptionally broad reading; in fact, virtually any service-connected activity occurring while combat operations are ongoing, could be construed as "in support of combat." Additionally, the Legislature's failure to specifically define the phrase is problematic in this case because of the overbroad application likely to result from a literal reading. As we noted in
 
 McClure v. ConocoPhillips Co.
 
 ,
 
 2006 OK 42
 
 , ¶ 12,
 
 142 P.3d 390
 
 , 395, the Legislature's failure to use a defined term in the Workplace Drug and Alcohol Testing Act created ambiguity requiring implementation of statutory rules of construction. A literal reading of "in support of combat" would be so overreaching as to create an absurd result not intended by the Legislature.
 
 See
 

 Hogg v. Okla. Cnty. Juvenile Bureau
 
 ,
 
 2012 OK 107
 
 , ¶ 7,
 
 292 P.3d 29
 
 , 33 (explaining that this Court should "give a sensible construction when interpreting statutes and not presume that the legislature intended an absurd result."). Applying the aforementioned principles guiding statutory interpretation, we find § 150.5 is ambiguous.
 

 ¶ 13 Our decisions recognize that if a statute is ambiguous, the Court may look to extrinsic sources to aid us in ascertaining its meaning.
 
 See, e.g.
 
 ,
 
 McClure
 
 , ¶ 12,
 
 142 P.3d at
 
 395 ;
 
 Cox v. Dawson
 
 ,
 
 1996 OK 11
 
 ,
 
 911 P.2d 272
 
 , 277 ("Having determined that the statute is unclear, we may resort to available sources of interpretative assistance to determine the Legislature's intent."). Although "combat" has not been specifically defined by Oklahoma legislation, several federal and state statutes defer to Section 112 of the Internal Revenue Code of 1986. The IRC defines "combat zone" as "any area which the President of the United States by Executive Order designates ... as an area in which Armed Forces of the United States are or have engaged in combat."
 
 26 U.S.C. § 112
 
 (c)(2) (emphasis added).
 
 See
 
 22 O.S.Supp.2018 § 973a (providing that veterans
 
 *114
 
 must provide proof that they served in a "combat zone," as defined in Section 112 of the IRC ). Further, the IRC uses the phrase "serving
 
 in support of
 
 such Armed Forces" to mean that an individual is located "in an area designated by the President of the United States by Executive order as a 'combat zone.' "
 
 26 U.S.C. § 7508
 
 (West) (emphasis added). According to these sources, it is clear that Father's training was not deployment for "combat" or "in support of combat."
 

 ¶ 14 Another consideration which bolsters our finding in this case is found in the Armed Forces Code definition of deployment. The term deployment is defined in
 
 10 U.S.C.A. § 991
 
 (b), and expressly excludes periods when a servicemember is "performing service as a student or trainee at a school (including any Government school)."
 
 10 U.S.C. § 991
 
 (b)(3)(A). Additionally, the Department of the Army has concluded that "[s]oldiers are not eligible for deployment until they have completed [basic training]/advanced individual training (AIT) or [Basic Officers Leaders Course]."
 
 [7]
 
 Considering the phrase "in support of combat," in light of the federal statutes and Army Regulations, we find that Father's attendance of basic training and advanced individual training was not deployment pursuant to 43 O.S.2011 § 150.1(5).
 
 [8]
 

 Conclusion
 

 ¶ 15 We hold that Father was not a "deploying parent" because his temporary transfer was not "in support of combat, contingency operation, or natural disaster" as mandated by 43 O.S.2011 § 150.1. Thus, the trial court erred in sustaining Father's motion seeking to transfer his custody and visitation rights under the ODPCVA.
 

 TRIAL COURT'S ORDER AND JOURNAL ENTRY OF JUDGMENT REVERSED; MATTER REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION
 

 ¶ 16 Gurich, C.J., Wyrick, V.C.J., Winchester, Edmondson and Darby, JJ., concur;
 

 ¶ 17 Kauger, Colbert, Reif and Combs, JJ., dissent.
 

 [1]
 

 The U.S. Department of Defense defines initial active duty for training as: "[b]asic military training and technical skill training required for all accessions." U.S. Dep't of Def.,
 
 Joint Publ'n 1-02, Dep't of Def. Dictionary of Military and Assoc. Terms
 
 264 (Apr. 12, 2001) (as amended through Oct. 17, 2007).
 

 [2]
 

 The National Guard states that advanced individual training (AIT) follows completion and graduation from basic training. In AIT, the individual will receive training in a Military Occupational Specialty (MOS). Upon completion of AIT, the individual will be MOS Qualified. National Guard,
 
 Advanced Individual Training
 
 (last visited Nov. 8, 2018), https://www.nationalguard.com/basic-combat-training/advanced-individual-training.
 

 [3]
 

 The ODPCVA was amended on November 1, 2017 after Mother filed her appeal. The amendments do not affect our ruling in this case. Nevertheless, we are applying the 2011 version of the statute.
 

 [4]
 

 2011 Okla. Sess. Laws, p. 2742. The definition of "deployment" in the ULC's 2010 draft of the UDPCVA closely resembled the meaning adopted by the Oklahoma Legislature in 2011.
 
 Compare
 
 ULC, Visitation and Custody Issues Affecting Military Personnel and their Families, (Draft April 2010)
 
 with
 
 43 O.S.2011 § 150.1. We do note, however, the definition of deployment adopted by the Legislature in the ODPCVA differs from the definition in the final version of the UDPCVA.
 
 See
 
 Unif. Deployed Parents Custody & Visitation Act, § 102 (2017).
 

 [5]
 

 Section 150.3 reads:
 

 A. In order to ensure an ongoing relationship with the child while deployed, pursuant to the Deployed Parents Custody and Visitation Act, upon application to the court by the deploying parent, the court shall designate a family member or another person with a close and substantial relationship to the child to exercise his or her visitation rights, unless the court determines it is not in the best interests of the child.
 

 B. Visitation awarded pursuant to this section derives from the deploying parent's own right to custodial responsibility. Neither this section nor a court order permitting designation shall be deemed to create any separate or permanent rights to visitation.
 

 Section 150.8 provides:
 

 A. If the deploying parent moves to designate a family member or another person with a close and substantial relationship with the child to exercise visitation rights, the court shall grant reasonable visitation to a member of the family of the child, including a stepparent or step sibling, with whom the child has a close and substantial relationship as defined in the Deployed Parents Custody and Visitation Act.
 

 B. Any visitation ordered by the court pursuant to this section shall be temporary in nature and shall not exceed or be less than the amount of custodial time granted to the deploying parent under any existing permanent order or agreement between the parents, with the exception that the court may take into account unusual travel time required to transport the child between the nondeploying parent and the family members allowed visitation.
 

 C. The person designated by the deploying parent to exercise visitation shall appear at the temporary order hearing.
 

 D. Rebuttable presumptions for proceedings under the Deployed Parents Custody and Visitation Act:
 

 1. In postdissolution proceedings, there shall be a rebuttable presumption that it is in the best interests of the child for a stepparent to exercise the deployed parent's parental duties;
 

 2. There shall be a rebuttable presumption that if the person designated by the deployed or deploying party meets the requirements of subsection A of this section, then it shall be in the best interest of the child that the person receive visitation; and
 

 3. There shall be a rebuttable presumption that visitation by a family member who has perpetrated domestic violence against a spouse, a child, a domestic living partner, or is otherwise subject to registration requirements of the Sex Offenders Registration Act is not in the best interest of the child.
 

 E. Any temporary order issued under the Deployed Parents Custody and Visitation Act shall be enforced as any other orders relating to the care, custody and control of the child.
 

 [6]
 

 The designated family member or designated person must have a close and substantial relationship with the child, as defined by the ODPCVA. 43 O.S.2011 § 150.8(A).
 

 [7]
 

 U.S. Dep't of Army, Reg. 135-200,
 
 Active Duty for Missions, Projects, and Training for Reserve Component Soldiers
 
 , para. 8-3(a) (Sept. 26, 2017).
 

 [8]
 

 The parties did not point us to any authority from our sister states resolving the same question. Likewise, this Court was unable to locate any decisions from other jurisdictions on the subject; thus we have relied on the federal statutes as extrinsic aids to assist us in reaching a resolution of this statutory question.