PAYCOM PAYROLL v. BOODOOSINGH



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:PAYCOM PAYROLL v. BOODOOSINGH

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 PAYCOM PAYROLL v. BOODOOSINGH
2021 OK CIV APP 43
Case Number: 119177
Decided: 05/13/2021
Mandate Issued: 11/03/2021
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2021 OK CIV APP 43, __ P.3d __

 

PAYCOM PAYROLL, LLC, Plaintiff/Appellee,
v.
BRIAN BOODOOSINGH, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE CINDY H. TRUONG, TRIAL JUDGE

REVERSED

Randon J. Grau, CHEEK & FALCONE, PLLC, Oklahoma City, Oklahoma, for Plaintiff/Appellee

Tony Gould, BROWN & GOULD, PLLC, Oklahoma City, Oklahoma, for Defendant/Appellant

JANE P. WISEMAN, PRESIDING JUDGE:

¶1 Defendant Brian Boodoosingh appeals the trial court's orders granting Plaintiff Paycom Payroll, LLC's motion for reasonable attorneys' fees and denying Defendant's motion to reconsider. After review of the facts and relevant law, we reverse the trial court's order granting Plaintiff's motion for attorneys' fees and decline to address Defendant's motion to reconsider because it is based on a non-appealable order.

FACTS AND PROCEDURAL BACKGROUND

¶2 On December 14, 2017, Plaintiff brought the present action against Defendant, a former employee who worked in Plaintiff's New York City offices, for violations of certain provisions of its employment agreement. Plaintiff specifically alleges the following in its motion for attorneys' fees:

[Plaintiff] filed this action on December 14, 2017, to recover damages sustained when former employee Defendant [] violated his Confidentiality, Non-Disparagement and Non-Disclosure Agreement by misappropriating confidential, proprietary information of [Plaintiff]. He downloaded voluminous amounts of [Plaintiff's] information to his personal computer and took the information with him when he left his employment to go work for [Plaintiff's] competitor. Defendant also violated his Non-Solicitation Agreement when he successfully solicited two of his former colleagues to leave their [Plaintiff's] employment. Both colleagues joined Defendant at his new employer.

¶3 During this case's ongoing discovery phase, Plaintiff on February 11, 2020, noticed Defendant for deposition to be taken in Oklahoma City on March 4, 2020. On March 3, 2020, Defendant filed a motion for protective order pursuant to 12 O.S. § 3226(C) to preclude Defendant's deposition on that date because (1) of the "surprise deposition notice his counsel received just 18 days ago without any prior notice, let alone attempt by Plaintiff to work out a mutually agreeable time and location for Defendant's deposition," (2) Defendant is getting married on March 29, 2020 and is then going on a honeymoon, and is unavailable for deposition until April 27, 2020, and (3) Plaintiff should pay Defendant's expenses to fly round trip from New York City to Oklahoma City plus one night's lodging in the event Plaintiff insists on deposing him in person.

¶4 In response to the motion for protective order, Plaintiff asked the trial court to deny the motion because (1) "Defendant's counsel failed to confer in good faith, either in person or by telephone, in an effort to resolve the dispute without Court action," (2) "Defendant has not established or provided any evidence of an undue burden with relation to appearing for his deposition in Oklahoma City," and (3) "[t]he events and dates Defendant referenced as requiring a continued delay of his deposition have passed."

¶5 After a hearing in June 2020, which had been rescheduled due to Covid-19, the trial court denied Defendant's motion for protective order and ordered Defendant to "appear personally in Oklahoma for deposition prior to August 31, 2020." The trial court also stated in its order filed July 16, 2020, that the "parties will pay their own fees and costs associated with Defendant's deposition." But the trial court granted Plaintiff "all reasonable fees and costs incurred in having to respond to this Motion." In compliance with the court's order, the deposition took place on August 10, 2020.

¶6 On August 18, 2020, Plaintiff filed a "motion for determination of reasonable attorneys' fees" associated with responding to Defendant's motion for protective order and requested fees of $7,290 pursuant to 12 O.S.2011 § 3226.1(B) and the trial court's inherent authority.

¶7 In response, Defendant asked the trial court either to deny Plaintiff's request for attorneys' fees or reduce the amount to $1,500 which is the "reasonable amount given the nature of the Response Plaintiff actually filed." Plaintiff replied that the amount requested is reasonable as supported by the evidence.

¶8 Defendant also filed a motion asking the trial court to reconsider and lift its July 2020 order imposing "monetary sanctions . . . for seeking a one-month continuance of his deposition that Plaintiff had unilaterally noticed, without his consent, to take place here in Oklahoma during March 2020 when" the pandemic "began raging in his home state of New York." Defendant argued that Plaintiff noticed him for deposition without prior consultation giving him only 18 days to "(a) obtain leave of work from his employer; (b) purchase an airline ticket at a premium cost; and (c) fly to Oklahoma during the Pandemic the week before Defendant's planned wedding and upcoming honeymoon." And, Defendant's counsel argued he was "rescheduling all work commitments for the month of March so he could undergo major, open-heart surgery." Defendant stated that for these reasons, he asked Plaintiff to either postpone the deposition to April or take the deposition remotely.

¶9 In response, Plaintiff argued Defendant "could have appeared for his scheduled deposition in Oklahoma City on March 4, 2020" because any emergency orders issued due to the pandemic were not entered until after that date and he had three weeks' notice for the deposition but filed his motion the day before the deposition. Plaintiff further stated that it should have been no surprise that Plaintiff wanted to take Defendant's deposition as this was an active case. Plaintiff also complains that "Defendant's counsel never offered an available deposition date for Defendant to appear in Oklahoma City in April 2020."

¶10 In an order filed October 14, 2020, the trial court granted Plaintiff's request for attorneys' fees in the amount of $7,290. On October 23, 2020, the trial court denied Defendant's motion to reconsider. Defendant appeals these two orders.

PROCEDURAL ISSUE

¶11 In its July 16, 2020, order, the trial court granted Plaintiff "all reasonable fees and costs incurred in having to respond to this Motion." Pursuant to that order, on August 18, 2020, Plaintiff filed its "motion for determination of reasonable attorneys' fees." On September 3, 2020, Defendant filed two motions: (1) a motion to reconsider requesting the trial court to "lift its order of July 16, 2020 imposing yet-to-be determined, monetary sanctions upon Defendant," and (2) a response to Plaintiff's motion for attorneys' fees.

¶12 Generally, "A motion to reconsider may be treated as a 12 O.S. § 651 motion for new trial when the motion to reconsider is filed within a ten-day period after the filing of a judgment, decree or appealable order." Andrew v. Depani-Sparkes, 2017 OK 42, ¶ 15, 396 P.3d 210. "A motion to reconsider may [be] treated as a [12 O.S. § 1031.1] motion 'to modify or to vacate a final order or judgment . . . if filed after ten (10) days but within (30) days of the filing of the judgment decree, or appealable order.'" Id. (quoted citation omitted).

¶13 Defendant's motion to reconsider was filed about 49 days after the trial court's July 16, 2020 order. But because Defendant's motion to reconsider was not filed after a "judgment decree, or appealable order" or after a "final order," it does not fall under § 651 or § 1031.1. In addition to the fact that Defendant is not appealing the July 2020 order, the trial court never certified it pursuant to 12 O.S.2011 § 994(A) and it remains a non-appealable interlocutory order not subject to our current review. Although Defendant asserts the October 23rd order denying his motion to reconsider may be reviewed on appeal pursuant to 12 O.S. Supp. 2020 § 993(A)(5),[1] we note the July 2020 order (on which the motion to reconsider is based) only grants Plaintiff "all reasonable fees and costs incurred in having to respond" to the motion. The fees had yet to be determined, so the July order does not "direct payment of money pendente lite" as required by this statute. However, after a hearing on Plaintiff's motion to determine the amount of fees, the trial court's order filed October 14, 2020, directs Defendant to pay Plaintiff "the sum of $7,290.00 . . . no later than October 25, 2020." The October 14th order granting sanctions in the form of a money judgment against Defendant directing the payment of money pendente lite does constitute an interlocutory order appealable by right pursuant to 12 O.S. Supp. 2020 § 993(A)(5).

¶14 All of this is to say we cannot review the trial court's October 23, 2020 order denying Defendant's motion to reconsider the July 2020 order granting Plaintiff costs and fees, the amount of which had yet to be determined, because it does not direct the payment "of money pendente lite" and is therefore not immediately appealable. We can, however, review the trial court's October 14, 2020 order, which clearly directs the payment of money pendente lite, pursuant to 12 O.S. Supp. 2020 § 993(A)(5). See Craft v. Chopra, 1995 OK CIV APP 135, ¶ 5, 907 P.2d 1109 (determining the trial court's order granting "sanctions in the form of a money judgment . . . directing payment of money pendente lite . . . constitutes an interlocutory order appealable by right").

¶15 The Craft Court directs that "while we may not reach the merits of the trial court's ruling on the [motion for protective order], we must nevertheless examine the basis and authority" for Defendant's motion for protective order "in order to reach the merits of the issue before us, i.e., the propriety of the trial court's order granting" attorneys' fees and costs in the form of a money judgment against Defendant. See Craft, 1995 OK CIV APP 135, ¶ 5.

STANDARD OF REVIEW

¶16 "We review the correctness of the trial court's imposition of sanctions under the abuse of discretion standard." TAL Techs., Inc. v. L.D. Rhodes Oil Co., 2000 OK 38, ¶ 14, 4 P.3d 1256. "When making that decision, the trial court's discretion, while broad, is not unbridled, and the sanction must be both fair and related to the particular claim or defense at issue in the discovery order." Barnett v. Simmons, 2012 OK CIV APP 44, ¶ 2, 278 P.3d 8. "'In order to determine whether there was an abuse of discretion, a review of the facts and the law is essential.'" Id. (quoting Board of Regents of Univ. of Oklahoma v. National Collegiate Athletic Assoc., 1977 OK 17, ¶ 3, 561 P.2d 499). "To reverse for abuse of discretion we must determine the trial judge made a clearly erroneous conclusion and judgment, against reason and evidence." State ex rel. Tal v. City of Oklahoma City, 2002 OK 97, ¶ 3, 61 P.3d 234.

¶17 Also, "[b]ecause statutory construction poses a question of law, the correct standard of review is de novo." Kohler v. Chambers, 2019 OK 2, ¶ 6, 435 P.3d 109.

ANALYSIS

¶18 After receiving notice from Plaintiff of its intent to depose Defendant on March 4, 2020,[2] Defendant filed a motion for protective order on March 3, 2020. Defendant asked the trial court to allow him to reschedule his deposition to a later date and to enter a protective order pursuant to 12 O.S. § 3226(C) which states:

1. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer, either in person or by telephone, with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or on matters relating to a deposition, the district court in the county where the deposition is to be taken may enter any order which justice requires to protect a party or person from annoyance, harassment, embarrassment, oppression or undue delay, burden or expense, including one or more of the following:

. . .

b. that the discovery may be had only on specified terms and conditions, including a designation of the time, place or the allocation of expenses . . . .

12 O.S. Supp. 2020 § 3226(C)(1)(b).

¶19 Defendant sets out three reasons why the deposition date should be moved until on or after April 27, 2020: (1) Defendant's counsel did not receive prior notice of the deposition and Plaintiff's counsel did not first attempt to work out a mutually agreeable date and location, (2) Defendant would not return from his wedding and honeymoon until April 2020, and (3) Plaintiff should pay Defendant's travel expenses from New York City to Oklahoma City including one night's lodging if Plaintiff insists on deposing Defendant in person. Defendant further argued:

Although the undersigned has informed Plaintiff's counsel of Defendant's present travel and scheduling limitations, Plaintiff refuses to withdraw its deposition notice unless Defendant nonetheless agrees to present himself here in Oklahoma City this month regardless of the aforementioned impediments. [See Ex. 1, Emails between counsel.] In an effort to reach a compromise, the undersigned offered to present Defendant for deposition this month, if possible by either telephone or video conference. But Plaintiff's counsel has failed to even respond to that proposed compromise, making the instant motion necessary.

¶20 In response, Plaintiff urges the trial court to deny the protective order because the deposition notice complied with 12 O.S.2011 § 3230 and because (1) "Defendant's counsel failed to confer in good faith, either in person or by telephone, in an effort to resolve the dispute without Court action;" (2) "Defendant has not established or provided any evidence of an undue burden with relation to appearing for his deposition in Oklahoma City;" and (3) "The events and dates Defendant referenced as requiring a continued delay of his deposition have passed." Plaintiff argues that Defendant requested a protective order only because he waited until the day before the deposition to object to it after sitting "silently for nearly three weeks after the notice of the deposition" was filed and without providing any alternate deposition dates despite several requests.

¶21 Plaintiff and Defendant attached several emails dated March 2nd and 3rd regarding the March 4th deposition to support the motion for protective order and the response. These are both quoted and summarized in part below:

March 2, 2020, at 10:31 a.m.: Plaintiff's counsel requests Defense counsel to confirm his client's attendance at the March 4, 2020 deposition.

March 2, 2020, at 10:41 a.m.: Defense counsel states his client will not be attending the scheduled deposition and wishes Plaintiff's counsel would have confirmed availability before serving the deposition notice. Defense counsel requests the notice be withdrawn and the parties find another arrangement or he will move for a protective order.

March 2, 2020, at 11:07 a.m.: Plaintiff's counsel responds stating it is "less than 48 hours" before Defendant's deposition and Defense counsel was "provided more than 504 hours of notice" and asking why Defense counsel failed to contact him earlier about his client's unavailability so another date could be arranged. Plaintiff's counsel then stated:

If you and your client are unavailable this Wednesday, then you need to provide me dates today regarding when your client is available so that we can reschedule his deposition. Unless and until you provide me with dates of availability, the properly issued notice will not be withdrawn and will remain in effect. Should you fail to provide dates of availability, I am indeed interested to read your protective order and see the excuse you provide to the Court, which you have not in good faith discussed with me, for waiting until after opposing counsel requested confirmation of your attendance to then provide less than 48 hours['] notice that you and your client are unavailable.

I also wish you would have given me the courtesy of a response to my email of January 29, 2020, to which I requested a response by February 7, 2020.

March 2, 2020, at 11:48 a.m.: Plaintiff's counsel further states that he "will not wait until April or later to take your      client's deposition, so all dates you provide for your client's availability must be in March."

March 2, 2020, at 11:55 a.m.: Defense counsel states that Plaintiff's counsel never consulted him before noticing his client's deposition thus Plaintiff's counsel's concern regarding his failure to contact him earlier "seems a bit disingenuous."

March 2, 2020, at 6:31 p.m.: Defense counsel explains Defendant lives on the East Coast, is young, and does not have the financial resources to travel to Oklahoma with only 20 days' notice. Defense counsel also states Defendant is getting married in March. However, Defense counsel offers to present Defendant for deposition in March via telephone or video.

March 3, 2020, at 3:00 p.m.: Plaintiff's counsel states that 20 days' notice is statutorily sound and he would have been willing to work with Defendant if he preferred a different date. Then Plaintiff's counsel states:

But you did not pick up the phone and call me or email me soon after receiving the Notice to inform me of your client's unavailability or ask for a different deposition date. Instead, you waited until the Monday before the Wednesday deposition to inform me that you and your client are not going to attend. And only after I first sought confirmation of his attendance. You knew for weeks of the deposition date and yet completely failed to inform me of your client's unavailability. In doing so, the time and resources spent on my preparation for the deposition have been wasted.

Plaintiff's counsel then asked the exact dates of Defendant's wedding and honeymoon and again asked Defense counsel to provide dates when his client is available for deposition in Oklahoma.

March 3, 2020, at 3:27 p.m.: Defense counsel states it is a professional courtesy to work out a mutually agreeable time for opposing party's deposition before serving notice. Defense counsel continues:

Your failure to do so is particularly unprofessional given you know my client is young, without substantial means, and lives in New York City. Of course 18-19 day[s'] notice you gave [Defendant] is unacceptable. First, he has to get permission to take off work. And given his wedding is this month, that is not an easy ask at all. Also, you know the price of airline tickets skyrocket without a few weeks before travel. While that extra cost may mean little to you or your client it is a huge deal to a young man like [Defendant].

March 3, 2020, at 4:05 p.m.: Plaintiff's counsel asks Defense counsel to not file or to withdraw his motion and simply provide available dates for his client's deposition.

¶22 As explained above, in July 2020 the trial court denied Defendant's motion for protective order and granted Plaintiff reasonable fees and costs incurred in responding to the motion. Plaintiff later filed a motion for determination of the fee amount to which Defendant responded. After a hearing, the trial court granted Plaintiff's motion for attorneys' fees and ordered Defendant to pay "Plaintiff the sum of $7,290.00, to Plaintiff no later than October 25, 2020." The trial court's order did not cite which statute it relied on to award fees.

¶23 Defendant's motion for protective order citing 12 O.S. § 3226(C) clearly relies only on this statute to support the motion, and, absent any other evidence, we can only presume the trial court used this statute to decide the motion for attorneys' fees. Section 3226(C) governs protective orders and § 3226(C)(1)(b) states:

1. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer, either in person or by telephone, with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or on matters relating to a deposition, the district court in the county where the deposition is to be taken may enter any order which justice requires to protect a party or person from annoyance, harassment, embarrassment, oppression or undue delay, burden or expense, including one or more of the following:

. . .

b. that the discovery may be had only on specified terms and conditions, including a designation of the time, place or the allocation of expenses . . . .

12 O.S. Supp. 2020 § 3226(C)(1)(b). Section 3226(C)(2) governs the award of expenses incurred when a motion for a protective order is denied:

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of paragraph 4 of subsection A of Section 3237 of this title apply to the award of expenses incurred in relation to the motion.

12 O.S. Supp. 2020 § 3226(C)(2). Section 3237(A)(4) states in relevant part:

4. AWARD OF EXPENSES OF MOTION.

. . . .

If the motion is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

12 O.S. Supp. 2020 § 3237(A)(4). In other words, "If the motion for protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person permit discovery. The provisions of [12 O.S. § 3237(A)(4)] apply to the award of expenses incurred in relation to the motion." 12 O.S. Supp. 2020 § 3226(C); see Charles W. Adams and Daniel J. Boudreau, 1A Vernon's Okla. Forms 2d, Civ. Proc., Ch. 6 F Introduction (2d ed. 2020).

¶24 We must examine how these statutes work together to derive their meaning and legislative intent. "When the Court examines a statute, our primary goal is to determine legislative intent through the 'plain and ordinary meaning' of the statutory language." Kohler v. Chambers, 2019 OK 2, ¶ 6, 435 P.3d 109 (quoting In re Initiative Petition No. 397, 2014 OK 23, ¶ 9, 326 P.3d 496). "Because the legislature expresses its purpose by words, the plain meaning of a statute is deemed to express legislative authorial intent in the absence of any ambiguous or conflicting language." Id.

¶25 Federal Rules of Civil Procedure 26(c) and 37(a)(5) are instructive on this point. "We may look to discovery procedures in the federal rules when construing similar language in the Oklahoma Discovery Code." Crest Infiniti, II, LP v. Swinton, 2007 OK 77, ¶ 2, 174 P.3d 996. The implicated language in the Oklahoma Discovery Code is similar to Federal Rules of Civil Procedure 26(c) and 37(a)(5):

The provisions of Fed. R. Civ. P. 37(a)(5) apply to the award of expenses incurred in relation to the motion for a protective order. The plain language of Fed. R. Civ. P. 26(c) makes the provisions of Fed. R. Civ. P. 37(a)(5) applicable whenever a motion for a protective order is successfully opposed.

8 Fed. Proc. Forms § 23:37, Sanctions when Protective Order is Denied (June 2020)(footnotes omitted). Like its federal counterpart, the statutory language in § 3226(C)(2) explicitly directs the trial court to § 3237(A)(4) for awarding expenses after denying a motion for protective order.

¶26 After denying Defendant's motion for protective order, the trial court ordered Defendant to present himself in person for deposition before August 31, 2020. Although we do not address the merits of this motion, the trial court had discretion to order the deposition to be taken pursuant to 12 O.S. § 3226(C)(2). In accordance with this order, Plaintiff took Defendant's deposition in person on August 10, 2020.

¶27 In a separate order dated October 14, 2020, the trial court granted Plaintiff's request for attorneys' fees in the amount of $7,290 which appears to comply with the statutory mandates of § 3226(C)(2) and § 3237(A)(4) "unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust." 12 O.S. Supp. 2020 § 3237(A)(4)(emphasis added).

¶28 In order to determine whether Defendant's motion for protective order was substantially justified "or that other circumstances make an award of expenses unjust," we have carefully reviewed all the court filings and communications leading up to the filing of the protective order motion. We discern an untoward lack of civility by both lawyers in trying to schedule/reschedule Defendant's March 4th deposition.

¶29 For example, Plaintiff's counsel did not attempt to reach a mutually agreeable date, time, and place with Defense counsel in scheduling Defendant's deposition. Initially extending such professional courtesy would have avoided most, if not all, of this unpleasantness. The court in Seabrook Medical Systems Inc. v. Baxter Health Care Corp., 164 F.R.D. 232 (S.D. Ohio 1995) considered a similar argument in which defendant scheduled a third-party's deposition without consulting plaintiff first to ensure availability. The district court held:

The Court therefore finds--as a matter of professional courtesy, and as a means to avoid future scheduling conflicts--that, when making arrangements for third-party depositions, counsel for both sides should jointly call the third-party deponent to schedule that party's deposition. When such calls cannot be made due to the third-party's unavailability, refusal to cooperate, or otherwise, counsel for both sides should contact each other and jointly agree to a deposition date. Only then should the deposition subpoena issue. What needs to occur is quite simple: counsel should discuss and agree to a deposition date before the issuance of the subpoena, not after.

Id. at 233 (emphasis added). It goes without saying that this common sense approach also applies to the present situation, but unfortunately, Plaintiff's counsel's unilateral approach to scheduling the deposition in person by notice was inimical to this courteous, common sense approach and set in motion the current conflict.

¶30 Defense counsel's lack of professional courtesy compounded the error by failing to notify Plaintiff's counsel of his client's unavailability until the day before the deposition. Defense counsel admitted on page 16 of his appellate reply brief that he received the notice at the very latest on February 17, 2020, giving him ample time to inform Plaintiff's counsel of his client's unavailability and attempt to reschedule the deposition before resorting to filing a motion.

¶31 Defense counsel offered to make his client available by alternate means via telephone or video during March, but Plaintiff's counsel never responded to this offer[4] and gave no explanation why the deposition had to be done in March in a case pending since December 2017. Although Plaintiff's counsel, without supplying a reason, states in an email he will not wait until April to take Defendant's deposition, we note that email was sent before Defense counsel informed him that Defendant could not appear in person in March due to his impending nuptials.

¶32 The facts of this case display the lack of civility and professional courtesy by both sides in this scheduling contretemps, and we conclude without question that these "circumstances make an award of expenses unjust." 12 O.S. Supp. 2020 § 3237(A)(4). To award fees under these circumstances constitutes a clear abuse of discretion. Because we conclude the trial court's $7,290 award was unjust, we reverse the trial court's order awarding these expenses. This issue is dispositive, and we decline to address any further issues on appeal.

CONCLUSION

¶33 After review of the facts and relevant law, we reverse the trial court's October 14, 2020 order granting Plaintiff's motion for attorneys' fees and decline to address the trial court's October 23, 2020 order denying Defendant's motion to reconsider because it is based on a non-appealable order.

¶34 REVERSED.

BARNES, J., and RAPP, J. (sitting by designation), concur.

FOOTNOTES

[1] Title 12 O.S. Supp. 2020 § 993 states:

A. When an order:

. . .

5. Directs the payment of money pendente lite . . . the party aggrieved thereby may appeal the order to the Supreme Court without awaiting the final determination in said cause, by filing the petition in error and the record on appeal with the Supreme Court within thirty (30) days after the order prepared in conformance with Section 696.3 of this title, is filed with the court clerk.

See also Oklahoma Supreme Court Rule 1.60(f), 12 O.S. Supp. 2020, ch. 15, app. 1.

[2] The notice to take deposition was filed in the case on February 11, 2020.

[3] There is nothing further in the appellate record indicating the subject of this January 29, 2020 email.

[4] We note that Defendant's deposition was scheduled to occur shortly before the State of New York issued its March 7, 2020 Executive Order regarding Covid-19. The deposition was also scheduled before the State of Oklahoma issued its March 15, 2020 Executive Order regarding Covid-19.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1995 OK CIV APP 135, 907 P.2d 1109, 66 OBJ 3850, Craft v. Chopra
Discussed at Length
 2012 OK CIV APP 44, 278 P.3d 8, BARNETT v. SIMMONS
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2002 OK 97, 61 P.3d 234, STATE ex rel. TAL v. CITY OF OKLAHOMA CITY
Discussed
 2007 OK 77, 174 P.3d 996, CREST INFINITI II, LP v. SWINTON
Discussed
 2014 OK 23, 326 P.3d 496, IN RE: INITIATIVE PETITION NO. 397, STATE QUESTION NO. 767
Discussed
 1977 OK 17, 561 P.2d 499, BD. OF REGENTS, ETC. v. NAT. COLLEGIATE ATH. ASS'N
Discussed
 2017 OK 42, 396 P.3d 210, ANDREW v. DEPANI-SPARKES
Discussed
 2019 OK 2, 435 P.3d 109, KOHLER v. CHAMBERS
Discussed at Length
 2000 OK 38, 4 P.3d 1256, 71 OBJ 1287, TAL Technologies, Inc. v. L.D. Rhodes Oil Co.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 3226, General Provisions Governing Discovery
Discussed at Length
 12 O.S. 3226.1, Abusive Discovery
Cited
 12 O.S. 651, New Trial - Definition - Causes for
Cited
 12 O.S. 993, Appeals from Certain Interlocutory Orders - Undertaking
Discussed at Length
 12 O.S. 994, Procedure When There is More Than One Claim or Party - Final Judgment
Cited
 12 O.S. 1031.1, Authorization to Correct, Open, Modify or Vacate Judgments - Time - Notice - Costs
Cited
 12 O.S. 3230, 12 O.S. 3230, Depositions Upon Oral Examination
Cited
 12 O.S. 3237, 12 O.S. 3237, Failure to Make or Cooperate in Discovery - Sanctions
Discussed at Length


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA